1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    YINYIN MAR MA,                          Case No.  13-cv-05196-JST

8              Plaintiff,

9         v.                                 **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR SUMMARY JUDGMENT**
10   CAROLYN W. COLVIN, Commissioner of      **AND GRANTING DEFENDANT'S**
     Social Security Administration,         **CROSS-MOTION FOR SUMMARY**
                                             **JUDGMENT**
11            Defendant.
                                             Re: ECF Nos. 17, 18
12

13        In this Social Security action, Plaintiff Yinyin Mar Ma ("Plaintiff") appeals a final decision

14   of Defendant Commissioner Carolyn W. Colvin ("Defendant") denying Plaintiff's application for

15   disability insurance benefits.  Before the Court are the parties' cross-motions for summary

16   judgment.  ECF Nos. 17, 18.  The matter is deemed fully briefed and submitted without oral

17   argument pursuant to Civil Local Rule 16-5.  Upon consideration of the moving papers, and for

18   the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and Defendant's

19   motion for summary judgment is GRANTED.

20   I.   **BACKGROUND**

21        A.   **Factual and Procedural History**

22        The Social Security Act provides disability insurance benefits to individuals who are

23   "under a disability."  42 U.S.C. § 423(a)(1).  The Act defines "disability" as an "inability to

24   engage in any substantial gainful activity by reason of any medically determinable physical or

25   mental impairment which can be expected to result in death or which has lasted or can be expected

26   to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

27   individual's impairment must be "of such severity that [she] is not only unable to do [her]

28   previous work but cannot, considering [her] age, education, and work experience, engage in any

1  other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.

2  § 423(d)(2)(A).

3    Plaintiff Yinyin Mar Ma claims disability beginning on October 11, 2007.  Administrative

4  Record ("AR") 158.  Ma is a 52-year-old woman who last worked in October 2007 as a hotel

5  housekeeper.  AR 38–41.  At her hearing, Ma testified that she worked as a housekeeper at two

6  hotels for a total of 50 to 52 hours per week.  AR 39.  At one hotel, she was responsible for

7  cleaning fourteen rooms and reported difficulty lifting the mattresses.  Id.  At the second hotel, she

8  placed candy on the pillows at night and made the beds.  Id.  Ma injured her back at work in

9  February 2006 and returned to work on a modified basis, but ultimately left work on the advice of

10  her physician in October 2007.  AR 38, 60–61.

11    Ma suffers from several impairments, including degenerative disk disease of the lumbar

12  spine, gastroesophageal reflux disease (GERD), insomnia, and mitral stenosis and regurgitation.

13  AR 36.  Between 2008 and 2012, Ma was evaluated by a battery of physicians, including Drs.

14  Lipton, Chen, Cayton, Fernandez and Kolin.  AR 36–38.  These physicians reached conflicting

15  conclusions regarding Ma's capabilities.  AR 36–38.  For example, Dr. Fernandez, one of Ma's

16  treating physicians, determined in 2011 that Ma was "limited to standing [for] no more than 30

17  minutes at a time, sitting for no more than one hour at a time and lifting [] no more than 10 pounds

18  at time."  AR 271.  In contrast, Dr. Chen, an internal medicine consultative examiner, determined

19  in 2010 that Ma "can stand and walk for six hours in an eight-hour workday.  She can sit for six

20  hours in an eight-hour day.  She can lift and carry 20 pounds occasionally and 10 pounds

21  frequently."  AR 717.  Beyond the symptoms documented by her physicians, Ma has testified that

22  she suffers from migraines and dizziness due to low blood pressure and reported that she cannot

23  lift her right hand, bend, or squat.  AR 38, 66.

24    Ma filed her application for disability benefits under Title II of the Social Security Act

25  around June 10, 2010.  AR 158.  The claim was denied by the Social Security Administration on

26  November 19, 2010, and denied again upon reconsideration on July 12, 2011.  AR 106–10, 115–

27  20.  An administrative law judge ("ALJ") heard Ma's case on April 18, 2012, and issued a

28  decision on May 14, 2012, finding that Ma was not disabled within the meaning of the Social

Security Act.  AR 31–47.  The ALJ evaluated Ma's claim using the five-step sequential evaluation

process for disability required under the Code of Federal Regulations:

> In step one, the ALJ determines whether a claimant is currently
> engaged in substantial gainful activity.  If so, the claimant is not
> disabled.  If not, the ALJ proceeds to step two and evaluates whether
> the claimant has a medically severe impairment or combination of
> impairments.  If not, the claimant is not disabled.  If so, the ALJ
> proceeds to step three and considers whether the impairment or
> combination of impairments meets or equals a listed impairment
> under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is
> automatically presumed disabled.  If not, the ALJ proceeds to step
> four and assesses whether the claimant is capable of performing her
> past relevant work.  If so, the claimant is not disabled.  If not, the
> ALJ proceeds to step five and examines whether the claimant has
> the residual functional capacity ("RFC") to perform any other
> substantial gainful activity in the national economy.  If so, the
> claimant is not disabled.  If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see 20 C.F.R. §§ 404.1520, 416.920 (2012).

At step one, the ALJ found that Ma had not engaged in substantial gainful activity since

October 11, 2007.  AR 36.  At step two, he found that Ma has the following severe impairments:

degenerative disc disease of the lumbar spine, GERD, insomnia, and mild mitral stenosis and

regurgitation.  Id.  At step three, he concluded that Ma does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. pt. 404, Subpart P, Appendix 1, and therefore proceeded to step four.

AR 38.  At step four, the ALJ found that Ma is capable of performing her past relevant work.  AR

38–41.  In the alternative, he proceeded to step five and found that "considering the claimant's

age, education, work experience, and residual functional capacity, there are other jobs that exist in

significant numbers in the national economy that the claimant can also perform."  AR 41.  Based

on his conclusions that Ma "can perform her past relevant work, as well as the full range of

unskilled light level work," the ALJ concluded that she is not disabled.  AR 42.

In reaching these conclusions, the ALJ gave "great weight" to the opinion of the

psychologist consultative examiner, Dr. Kolin, and to the state agency medical consultants who

found Ma capable of light work.  AR 40, 41.  He also relied on the testimony of Malcolm

Brodzinsky, a vocational expert.  AR 41.  The ALJ found Ma's own statements concerning the

intensity, persistence, and limiting effects of her symptoms "not credible" to the extent they were

United States District Court
Northern District of California

3

inconsistent with his residual capacity assessment and discounted the opinion of Dr. Fernandez, Ma's treating physician, as "inconsistent with the overall evidence of record." AR 40.

The Appeals Council of the Social Security Administration denied review of this decision on September 18, 2013. AR 1–6. Ma subsequently filed this action seeking review of the denial of benefits. ECF No. 1.

**B.    Jurisdiction**

The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).

**C.    Legal Standard**

The Court may set aside a denial of benefits only if it is "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084–85 (9th Cir. 2000). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. It is "more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The Court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Id. at 1258. The ALJ is responsible for determinations of credibility, resolution of conflicts in medical testimony, and resolution of all other ambiguities. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

**II.    DISCUSSION**

In Ma's Motion for Summary Judgment, she argues that the ALJ's decision is not supported by substantial evidence, and that overwhelming medical evidence supports her disability claim. ECF No. 17 at 3.

**A.    The ALJ's Step Three Analysis**

As discussed above, the ALJ determined at step two that Ma suffers from the following severe impairments: degenerative disc disease of the lumbar spine, GERD, insomnia, and mild

United States District Court
Northern District of California

mitral stenosis and regurgitation.  AR 36.  At step three, however, he found that she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  AR 38.  He explained: "Listed impairments at Section 1.00 and Section 4.00 have been considered.  The claimant's impairments do not meet the criteria for any of these impairments."  Id.; see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Ma argues that this finding was not supported by substantial evidence because the ALJ failed to consider whether her condition equals Listing 1.04.  ECF No. 17 at 9.  Listing 1.04 covers:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  Although she acknowledges that she does not meet the listing, and that "the examining and treating physicians did not specifically describe the radicular pain in a neural anatomic distribution," Ma suggests that the reports of Drs. Lipton and Fernandez demonstrate that her condition equals the listing.  Id. at 9–10.  She asks the Court to "take judicial notice of the fact that a physician would not perform epidural injections at the L4, L5, and S1 nerve roots," as Dr. Fernandez did, "absent evidence of nerve root compression or irritation."  Id. at 9.

The Court denies Ma's request for judicial notice.  The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  This type of medical opinion cannot be described as "generally known within the trial court's territorial jurisdiction" and Ma

5

1    provides no support from any source for her statement.  See ECF No. 17 at 9.  Ma has therefore

2    failed to establish that this is an appropriate subject for judicial notice.

3         The Court finds that Ma has failed to show that the ALJ's step three determination was

4    unsupported by substantial evidence.  Although Ma recounts the medical reports of Drs. Lipton

5    and Fernandez, she does not identify any evidence in the record to support her position that her

6    degenerative disk disease, which the ALJ characterized as "severe," is medically equal to Listing

7    1.04.  Specifically, she does not point to "evidence of nerve root compression characterized by

8    neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

9    associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and . . .

10   positive straight-leg raising test (sitting and supine)" or evidence that would equal this

11   combination of impairments.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

12        **B.      The Combination of Orthopedic and Cardiac Conditions**

13        Second, Ma argues that the ALJ's decision is unsupported by substantial evidence because

14   the ALJ failed to consider that the combination of her orthopedic and cardiac impairments render

15   her totally disabled.  ECF No. 17, at 10–11.  See 20 C.F.R. § 404.1523 ("In determining whether

16   your physical or mental impairment or impairments are of a sufficient medical severity that such

17   impairment or impairments could be the basis of eligibility under the law, we will consider the

18   combined effect of all your impairments . . . .");  McDonald v. Sec'y of Health & Human Servs.,

19   795 F.2d 1118, 1127 (1st Cir. 1986) ("It seems simply a matter of common sense that various

20   physical, mental, and psychological defects, each non-severe in and of itself, might in

21   combination, in some cases, make it impossible for a claimant to work.").

22        The record indicates that, contrary to Ma's argument, the ALJ properly considered the

23   combination of her impairments.  In his explanation of applicable law, he explained his duty to

24   consider "whether the claimant has a medically determinable impairment that is 'severe' or a

25   combination of impairments that is 'severe;'" and "whether the claimant's impairment or

26   combination of impairments is of a severity to meet or medically equal" a relevant listing.  AR 35.

27   He also explained that in determining a claimant's residual functional capacity, he "must consider

28   all of the claimant's impairments, including impairments that are not severe."  Id.  In the body of

United States District Court
Northern District of California

6

his decision, the ALJ discussed both Ma's cardiac and orthopedic conditions at steps two, three, and four.  AR 36–41.  There is no indication in the record that he failed to consider both conditions and their cumulative effects.  Ma's suggestion that the ALJ committed legal error by failing to evaluate her orthopedic and cardiac impairments in combination is therefore without merit.

### C.     The ALJ's Residual Functional Capacity Analysis

Third, Ma challenges the ALJ's determination at steps four and five that she has the residual functional capacity to perform her past work and the full range of light work as defined in 20 C.F.R. § 404.1567(b).  ECF No. 17 at 11–13; see AR 38–42.  Her objections fall into two broad categories: objections related to the testimony of the vocational expert and objections to the relative weight the ALJ accorded the medical evidence.  ECF No. 17 at 11–13.  She also objects that the ALJ made an adverse credibility comment concerning her testimony without adequately explaining his conclusion.  Id. at 9.

#### 1.     The Vocational Expert's Testimony

Ma argues that the ALJ's decision was not based on substantial evidence because he erroneously relied on the testimony of the vocational expert.  ECF No. 17 at 11.

At step four, the ALJ examines the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844–45 (9th Cir. 2001).  For the ALJ to conclude that the claimant has the residual functional capacity to perform the requirements of her past relevant work, the claimant must be able to perform either "[t]he actual functional demands and job duties of a particular past relevant job[] or [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."  Id.  An ALJ may use the testimony of a vocational expert to determine whether the claimant can perform past relevant work and whether her skills can be used in other work.  20 C.F.R. § 404.1566(e); Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014).  He may rely on a vocational expert's testimony based on a hypothetical if it "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  Ghanim, 763 F.3d at 1166 (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)).

United States District Court
Northern District of California

1   Credibility questions, conflicts in the medical testimony, and all other ambiguities are resolved by

2   the ALJ.  Magallanes, 881 F.2d at 750.

3        Here, in reaching his conclusion that "the claimant is able to perform [her past relevant

4   work] as actually and generally performed," the ALJ relied on the testimony of a vocational

5   expert, Malcolm Brodzinsky.  AR 41.  Brodzinsky testified that for the entire relevant period Ma

6   worked as a housekeeping cleaner with "light physical demands."  AR 79.  Although Ma claims

7   that the ALJ inappropriately led the vocational expert to the conclusion that Ma's job was "light

8   work," ECF No. 17 at 12, the record shows that the vocational expert used the phrase "light

9   physical demands" at the outset of his testimony in response to a generic question ("Could you

10  describe her past work for me, please?") and characterized housekeeping, as generally performed

11  in the economy, as a "light job" without any improper prompting from the ALJ.  AR 79–81.  At

12  one point, the ALJ in fact suggested that Ma's work might "maybe be a medium job."  AR 80.

13  There is no indication in the record that the ALJ's questioning on this point was unfair or

14  improperly leading.

15       The ALJ asked several questions involving lifting mattresses, which he estimated "would

16  probably be a little more than 20 pounds."  AR 79–80.  Ma notes that mattresses at major hotel

17  chains weigh substantially more than 20 pounds.  ECF No. 17 at 11.  She also claims that the ALJ

18  erroneously stated that Ma would work with a partner, directly contradicting Ma's testimony that

19  she was responsible for up to 14 rooms and was required to work alone.  ECF No. 17 at 12.  Ma's

20  argument is not supported by the administrative record.  The record indicates that the vocational

21  expert, rather than the ALJ, stated that housekeepers "wouldn't be required to lift mattresses

22  alone," but "would be in teams of two."  AR 81.  The vocational expert concluded that two

23  housekeepers "would have equal responsibility" for "a mattress weighing as much as 40 pounds."

24  Id.  The record does not indicate that the ALJ relied on his own estimate of the weight of a hotel

25  mattress.  Rather, it suggests that he relied on the vocational expert's description of Ma's past

26  relevant work.  At step four, the ALJ is required to determine whether the claimant has the

27  residual functional capacity to perform her past work, either as performed at a particular past

28  relevant job or as generally required by employers throughout the national economy.  Pinto, 249

United States District Court
Northern District of California

F.3d at 844–45.  He "may take administrative notice of any reliable job information, including information provided by a [vocational expert].  A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony."  Bayliss, 427 F.3d at 1218.  Here, the transcript demonstrates that the vocational expert properly provided job information to the ALJ, not that the ALJ relied on his own assumptions about Ma's past relevant work.

The vocational expert responded to two hypothetical questions.  The ALJ first posed the following question:

> ALJ:  An individual who can lift 20 pounds and sit, stand, and walk for six hours each — so, in some combination then complete an eight-hour workday — would such an individual be able to perform her past work?
>
> VE:  No, I — that — I need some clarity on that.  You said a combination of sit, stand, and walk six hours of eight hours?
>
> ALJ:  She can sit, stand, or walk six hours each.
>
> VE:  Okay.
>
> ALJ:  And so, in some combination of sitting, standing, and walking can complete an eight-hour workday.  I —
>
> VE:  Such a hypothetical individual could perform that work because the standing and walking together would be part of the job.
> …
> ALJ:  Would that be plus the full range of unskilled, light work?
>
> VE:  Yes, it would, your honor.

Ma argues that this hypothetical was improper because it contradicts the opinion of Ma's treating physician, Dr. Fernandez, and because it "is not based on any evidence whatsoever, let alone substantial evidence."  ECF No. 17 at 12.  This argument is unpersuasive.  An ALJ may rely on a vocational expert's testimony based on a hypothetical if it "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  Ghanim, 763 F.3d at 1166 (citing Bayliss, 427 F.3d at 1217).  Credibility questions, conflicts in the medical testimony, and all other ambiguities are resolved by the ALJ.  Magallanes, 881 F.2d at 750.  The ALJ was not required to incorporate Dr. Fernandez's opinion in the hypothetical posed to the vocational expert because he had concluded that this opinion was "inconsistent with the overall evidence of record."

9

AR 40–41.  The hypothetical finds support in the functional assessment of Dr. Chen, who concluded that Ma "can stand and walk for six hours in an eight-hour workday. She can sit for six hours in an eight hour day."[1]  AR 37, 717.   The ALJ's hypothetical was properly based on the limitations that he found credible and supported by substantial evidence in the record.

The vocational expert also responded to a second hypothetical posed by Ma's counsel. Counsel added to the ALJ's hypothetical Ma's reported chronic fatigue, specifically "that she doesn't get up until noon and she goes to bed at 10:00, and she spends at least half that time lying down because of fatigue and pain."  AR 85.  The vocational expert responded that "a hypothetical individual who had those restrictions and limitations would not be able to work in that position." Id.  In his written decision, the ALJ found that "[t]he evidence of record does not support a finding that claimant must lie down frequently during the day.  Claimant's treatment notes do not indicate constant complaints of fatigue and no such work restriction has been included in any medical source statement."  AR 42.  Ma points to Dr. Cayton's report of November 12, 2010 as evidence that Ma suffers from fatigue, insomnia, and reduced daytime alertness, corroborating Ma's own testimony regarding her fatigue.  ECF No. 17 at 13.  Dr. Cayton's report states that Ma has "moderate exertional fatigue" and that she "reports generalized fatigue" as a result of her mitral stenosis, and concludes that "[w]orkplace modifications may be necessary, but these conditions do not prevent Ms. Ma from returning to work."  AR 880, 886.  Dr. Cayton does not state that Ma must lie down frequently during the day, or include the specific limitations listed in counsel's hypothetical.  These restrictions are derived from Ma's testimony.  AR 75–77.  The ALJ explained that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" because although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the objective medical evidence of record does not support the extent of the claimant's subjective allegations."  AR 40.  He cited extensive evidence from Ma's medical history and testimony in support of his conclusion.  Id.

---

[1] Dr. Chen's functional assessment might be read to mean that Ma can stand and walk for a *total* of six hours a day and sit for six hours a day, rather than that she can sit, stand, and walk for six hours each.  However, it does not matter how the Court might interpret this assessment.  It is for the ALJ to resolve ambiguities in the evidence.  Magallanes, 881 F.2d at 750.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   This credibility determination is within the discretion of the ALJ, and provides no basis for

2   disturbing his decision.  See Magallanes, 881 F.2d at 750, 751.  The Court concludes that

3   substantial evidence in the record supports the ALJ's conclusion that counsel's hypothetical was

4   not representative of Ma's residual functional capacity.

### 2.       The ALJ's Evaluation of the Medical Opinion Evidence

6           Ma next argues that the ALJ's decision is not based on substantial evidence because the

7   ALJ gave "great weight" to the opinion of Dr. Kolin, a consulting psychologist, even though Ma's

8   disability claim is based on her orthopedic and cardiac conditions, rather than a mental or

9   behavioral disorder.  ECF No. 17 at 13; AR 40.  In Ma's view, the ALJ's decision was necessarily

10  flawed because he relied heavily on a consulting expert in a specialty unrelated to her claim, while

11  discounting the reports of Drs. Lipton and Cayton and her treating physician, Dr. Fernandez.  ECF

12  No. 17 at 13.

13          The Ninth Circuit distinguishes between the opinions of three types of physicians: "(1)

14  those who treat the claimant (treating physicians); (2) those who examine but do not treat the

15  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

16  (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, a

17  treating physician's opinion is afforded greater weight because "he is employed to cure and has a

18  greater opportunity to know and observe the patient as an individual."  Magallanes, 881 F.2d at

19  751.  "The treating physician's opinion is not, however, necessarily conclusive as to either a

20  physical condition or the ultimate issue of disability."  Id.  An ALJ may reject the uncontroverted

21  opinion of a claimant's physician if he presents clear and convincing reasons for doing so.  Id.

22  Where physicians' opinions are in conflict, an ALJ may reject the opinion of the treating physician

23  if he "make[s] findings setting forth specific, legitimate reasons for doing so that are based on

24  substantial evidence in the record."  Id.; see also 20 C.F.R. § 404.1527(d)(2) ("Although we

25  consider opinions from medical sources on issues such as . . . your residual functional

26  capacity . . . , or the application of vocational factors, the final responsibility for deciding these

27  issues is reserved to the Commissioner.").  "[W]here the evidence is susceptible of more than one

28  rational interpretation," the decision of the ALJ must be upheld.  Moncada v. Chater, 60 F.3d 521,

1    523 (9th Cir. 1995).

2         As an initial matter, there is no indication in the record that the ALJ gave improper weight

3    to the opinion of Dr. Kolin.  The decision properly surveys all of Ma's reported symptoms,

4    including the evidence in the record related to her mental health.  See AR 40.  The ALJ appears to

5    rely on Dr. Kolin's opinion only for his conclusion that Ma's mental health does not interfere with

6    her capacity to perform unskilled work, which Ma does not dispute.  AR 40; ECF No. 17 at 13.

7    There is no suggestion that the ALJ's evaluation of the opinions of Drs. Lipton, Cayton, and

8    Fernandez was in any way related to his evaluation of Dr. Kolin's opinion.

9         Ma does not point to any evidence in the ALJ's decision that he discounted the opinions of

10   Drs. Lipton or Cayton.  Although the ALJ did give less weight to the opinion of Dr. Fernandez,

11   Ma's treating physician, he properly explained that he based this decision on his conclusion that

12   the opinion "is inconsistent with the overall evidence of record."  AR 40.  In particular, the ALJ

13   explained:

> Dr. Fernandez's restrictions [including restrictions on lifting over
> ten pounds and possibly a limitation to sitting no more than one hour
> per day] are inconsistent with claimant's testimony and her reports
> to other providers and evaluators regarding her ability to perform
> activities of daily living.  She reports that she can walk 1–2 miles,
> do housework, attend temple for an hour, exercise at the gym, cook,
> and grocery shop.  Dr. Fernandez's restrictions are also inconsistent
> with claimant's negative examination and demonstrated ease of
> movement on October 27, 2010, and with claimant's normal
> electrophysiological studies (Exhibits 9F and 23F).  Great weight is
> given to the opinions of the state agency medical consultants who
> found the claimant capable of light work, as these opinions are
> consistent with the overall evidence of record (Exhibits 18F and
> 21F).

21   The ALJ's conclusion that Dr. Fernandez's opinion should not be given controlling weight finds

22   adequate support in the record and must therefore be affirmed.

23        The issue is not whether there is some evidence to support Ma's position, but rather

24   whether there is substantial evidence to support the ALJ's findings.  If there is substantial

25   evidence to support the ALJ's findings, the Court cannot substitute its own evaluation of the

26   evidence.  Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985); see also Moncada, 60 F.3d at 523

27   ("Where evidence is susceptible to more than one rational interpretation, the decision of the ALJ

28

United States District Court
Northern District of California

12

must be upheld."); <u>Drouin</u>, 966 F.2d at 1258 ("Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ.").  Here, the record contains substantial evidence supporting the ALJ's finding that Ma had the residual functional capacity to perform her past relevant work and the Court must therefore defer to his conclusions.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated:  December 16, 2014

_____
JON S. TIGAR
United States District Judge